[Civil No. 2337. Filed June 19, 1925.]

[237 Pac. 186.]

## BABBITT BROTHERS TRADING COMPANY, a Corporation, Appellant, v. HAROLD STEINFELD, Appellee.

1. APPEAL AND ERROR—JUDGMENT WILL BE AFFIRMED, IF SUBSTANTIAL EVIDENCE SUPPORTS EITHER THEORY UPON WHICH IT MIGHT HAVE BEEN DECIDED.—Where no findings of fact or conclusions of law were made, so that it cannot be determined whether judgment was rendered on general issue or plea of accord and satisfaction interposed, it will be affirmed, if there is substantial evidence to support either plea.

2. LIVERY-STABLE AND GARAGE KEEPERS—EVIDENCE HELD TO SHOW AUTHORIZATION TO REPAIR CAR.—Evidence *held* to show defendant's authorization to plaintiff to repair car.

3. LIVERY-STABLE AND GARAGE KEEPERS—OWNER OF CAR. AUTHORIZING REPAIRS LIABLE FOR REASONABLE VALUE OF LABOR AND MATERIAL. Owner of car, authorizing repairs thereon and change of car into different type, is liable for reasonable value of labor and material done and furnished in making such repairs and change.

4. APPEAL AND ERROR—SUM ALLEGED IN PLEADINGS FOR WORK DONE AND MATERIAL FURNISHED DEEMED REASONABLE, WHEN NOT QUESTIONED IN THAT RESPECT. — Sum alleged in pleadings for work done and material furnished will be deemed reasonable, when not questioned in that respect.

5. ACCORD AND SATISFACTION—COMPROMISE AND SETTLEMENT—ACCEPTANCE BY GARAGE OF CAR BUYER'S CHECK IN SATISFACTION OF

---

5. See 1 R. C. L. 201.

Contract of Purchase and Sale Pursuant to Buyer's Tender, Held not Satisfaction of Repairs on Old Car Taken in.—Acceptance, by garage owner of car buyer's check in full satisfaction of contract of purchase and sale pursuant to buyer's tender, *held* not satisfaction of debt for repairs on old car taken in the trade, on which buyer had previously authorized repairs.

See (1) 4 C. J., p. 655, n. 3 New. (2) 38 C. J., p. 77, n. 65. (3) 38 C. J., p. 77, n. 68. (4) 4 C. J., p. 745, n. 80 New. (5) 1 C. J., p. 529, n. 80; 12 C. J., p. 341, n. 31.

APPEAL from a judgment of the Superior Court of the County of Pima. George R. Darnell, Judge. Judgment reversed and cause remanded with directions.

Mr. James R. Dunseath, for Appellant.

Mr. Charles Blenman, for Appellee.

ROSS, J. — Babbitt Brothers Trading Company brought suit against Harold Steinfeld for a balance of $629.65 for work and labor performed, and for goods and materials furnished defendant, at his special instance and request, for repairs on an automobile. Defendant interposed the general issue and further pleaded that, before the complaint was filed, he delivered to plaintiff, and plaintiff received and accepted $300 in full satisfaction and discharge of its claim. The case was tried by the court without a jury and the court, without making findings of fact or conclusions of law, rendered judgment for defendant. On this appeal we are therefore at sea to know whether the court decided the case on the general issue or upon the plea of accord and satisfaction. But if there is substantial evidence to support either, under the well-established rule, we will not disturb the decision.

The evidence is undisputed that on February 2, 1923, the plaintiff, who is in the automobile business at Tucson, and defendant, a resident of such city,

made a trade by the terms of which plaintiff traded to defendant a new Cadillac car for a used Cadillac car (phaeton type), a Cadillac speedster, and $300 cash. In other words, it is undisputed that defendant, under the contract, was to pay plaintiff for a new car the two used cars and $300 cash. The controversy is over some work and material done and furnished by plaintiff in repairing the used car, designated herein as the speedster. It seems that in July, 1922, this car or the body of it, was destroyed by fire. The chassis was taken to plaintiff's place of business in October or November, 1922, to be sold and, in its condition only $50 was offered for it by the junkman. Upon the suggestion of the plaintiff, to which defendant consented, it was proposed that the chassis be repaired and made into a speedster, which was done at an expense of $726.39. The evidence as to whether plaintiff did the repairing of chassis, at the request of defendant, should perhaps be stated so that it may be seen that, while there is some controversy as to what or how much should be done by way of repairs, there was no disputing that defendant gave his consent to have it repaired. Defendant testified:

"I believe it was Mr. Babbitt with whom I had a conversation with reference to the doing of the work, if any person.

"I afterwards bought a new car from the Babbitt Brothers, and this chassis was a part of the trade, after the repairs or after some work had been done on it by the Babbitt Brothers.

"We agreed on an allowance of approximately a thousand dollars as an allowance on that particular machine, in our trade. . . .

"I was talking to Dave Babbitt, and I asked him if he would have somebody in his organization look over that Cadillac limousine that had been through the fire and see what could be done about turning it into some money. So he sent Mr. Melluish down to look at the car, and they suggested that they would have the car hauled up from my garage to their quarters on Stone

avenue and look the car over, which they did. . . .
Mr. Melluish said: 'Yes, if the heat hasn't damaged
the car any, the mechanical end of it, I think myself
you ought to be able to sell that car to good advan-
tage.' He said, 'I will tell you what I am going to
do.' He says, 'The university is just opening, and
there is quite a demand out there for cars, students
who want roadsters; that is, sporty looking roadsters,
Without spending much money on this car, I am go-
ing to put on a couple of jump seats and make it into
a sporty little roadster. It won't cost much money to
do that, and throw a coat of paint on it, and we will
sell it.' I says, 'How much can you get for it?'
'Well,' he says, 'I think I can get you somewheres
around $1,000 for that car.' . . . I says, 'All right;
put these jump seats on that you are talking about.'
I says, 'What will they come to, approximately?'
So he gave me a price that the whole work would come
to of about one hundred fifty dollars. The next
time I saw the car it was completed and Mr. Melluish
was running around in the car. I never authorized
him to do any work on the car whatsoever. I never
told him to spend any particular amount, any money
at all on the car. The only conversation we had as to
the price was a matter simply of taking off that old
burned limousine body and putting those jump seats
on. That is all I understood he was going to do.
That is all our conversation was about. . . .

"I did agree with Melluish that he could go ahead
and put some old bodies on there, a couple of jump
seats he was to put on there. After the jump seats
had been put on I rode in the car. I saw it."

The plaintiff's manager, David Babbitt, testified on
that question:

"Finally Mr. Steinfeld purchased a car outright
and requested me to try to dispose of this chassis.
We tried for some time. We were offered, I think,
as high as $50 from the junkman for it, and finally
I think it was at the suggestion of my used car man,
I went to Harold and suggested that we rewire the
motor, work the car over, put a body on it and make
it a salable article, make a salable article of the car;

that we sell it, and any profit derived from the sale would go to Mr. Steinfeld as a credit. And we went ahead and fixed up the car.''

Under this state of the evidence, it cannot be successfully contended that plaintiff did the work of repair without authority from defendant. The work and material may have cost more than defendant expected or authorized, but he has not, in his testimony or otherwise, contended that the charge was unreasonable. After the chassis had been repaired and made into a speedster, the trade above mentioned was made, and in such trade the speedster was estimated by the plaintiff to be of the value of $850. It seems at the time of the trade no bill had been rendered defendant for repairs, and nothing was said as to repairs at that time. Later plaintiff rendered bill for work and material in effecting the repairs of chassis, and defendant refused to pay such bill, contending that his understanding of the trade was that he was to have a new Cadillac for the used phaeton and the speedster and $300 cash; and, although he admits nothing was said about repairs, he states he believed plaintiff was to stand that.

As a legal proposition, the defendant without question was liable for the reasonable value of the work and material put upon the chassis to make it a salable article. It is unquestioned that its value was greatly enhanced thereby. Before being repaired only fifty dollars was offered for it, whereas afterward plaintiff was willing and did allow in the trade eight hundred fifty dollars for it. Of course plaintiff could have consented to stand the expense of repair, but it seems the trade was made on the basis of the value of the speedster after it was repaired and not on its value before. Defendant testifying said:

''I paid the $300 and I never made any offer to pay or ask any question about repairs on the speedster. I was never presented with a bill.''

The manager of plaintiff explained in his testimony that the custom was, when a used automobile or one out of repair was consigned to plaintiff to put in condition for sale, to render no bill to the consignor until the car was disposed of, and in that way accounted for the delay in sending a bill to defendant.

We are of the opinion that the evidence conclusively shows defendant was indebted to plaintiff for the reasonable value of labor and material done and furnished in repairing the burned car, and making it into a speedster; and since the reasonableness of the amount charged is not questioned, either in the pleadings or testimony, we must assume the sum charged to be reasonable, and that defendant did not sustain his general denial of the indebtedness as alleged in the complaint.

The plea of accord and satisfaction is based upon the facts already stated, and a letter written by defendant to plaintiff, on May 14, 1923, in which he acknowledged the receipt of an itemized statement of account for a balance of $923.35 and denied its correctness.  Among other things he said:

"Your Mr. O'Reilly submitted me a proposition to sell me the Cadillac car which I am at present driving for $300, taking as a credit on the purchase price Cadillac car that I was driving at that time and an old Cadillac car that was formerly my mother's limousine.  I accepted Mr. O'Reilly's proposition, and took delivery of the car on that basis. . . . Whatever work was done on my mother's old car was performed on your own volition and responsibility, as it was never authorized by me. . . . Within two or three days Mr. O'Reilly called at my office and stated that he would accept the above referred to trade of the two cars for the new Cadillac equipped as desired and $300.  The sale was consummated without any reference to any balance being due Babbitt Brothers, and I repeat I know nothing whatever about an itemized statement submitted to me for the first time this day, and am not responsible for these charges.  I am inclosing

herewith check for $300 in full payment of the Cadillac car purchased from you under the agreement entered into on or about February 2d of this year.''

The plaintiff, upon receipt of letter and check, credited defendant's account with the $300, and thereafter brought this suit for the balance due for work and material done and furnished in repairing the burned car, and making it into a speedster. It is contended by defendant that the acceptance of the $300 by plaintiff, under the condition it was tendered, was in full satisfaction of plaintiff's demand. The plaintiff contends there never was any question regarding the payment of the $300, it being the cash agreed to be paid by defendant, in addition to the two used cars, for the new car, and that defendant in making that payment was only paying what he admitted was due plaintiff.

We think defendant's statement of the contract, as contained in his letter, accords with plaintiff's contention, and that the payment of the $300 was intended to satisfy only the trading contract and had no application to the work and material used in repairing the speedster—an entirely different transaction. Defendant says:

"I am enclosing herewith check for $300 in full payment of the Cadillac car purchased from you under the agreement entered into on or about February 2d of this year."

And, earlier in the letter, he stated what that agreement was, namely, that he would trade two used cars, in their then condition, and give $300 cash for a new car. It will be noticed that the check was not sent in full satisfaction of all demands plaintiff held against defendant, but "in full payment of the Cadillac car." Payment was not made on condition that, if plaintiff accepted the $300, it should forego its claim for repairs. It did not purport to be in payment or satisfaction of claim for repairs on car. Indeed, he said:

"Whatever work was done on my mother's old car (burned car) was performed on your own volition and responsibility, as it was never authorized by me."

And so it was not even defendant's contention at the time he paid the $300 to plaintiff that it was in satisfaction of the claim or demand for repairs. He simply denied ever owing plaintiff anything on that account instead of admitting the debt and insisting it was canceled by agreement, as part of the consideration he paid for new car. It is as if he had said:

"I did not authorize the repair. I never have owed you, and do not now owe you anything, on that account."

If the tender had been in full of all demands, its acceptance doubtless, under the law of accord and satisfaction, would have been a bar to this action. The statement of the rule cited by defendant from 1 Cyc. 332, is as follows:

"To constitute an accord and satisfaction, it is necessary that the money should be offered in full satisfaction of the demand, and be accompanied by such acts and declarations as amount to a condition that the money, if accepted, is accepted in satisfaction; and it must be such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such condition."

In accepting the check for $300 plaintiff took it subject to the conditions imposed in defendant's letter of transmittal, that is, in satisfaction of the contract of purchase and sale of the new automobile, but of nothing else, since defendant limited its application to the payment of the Cadillac car. It seems to us from the evidence the defendant failed to sustain either his general denial or his plea of accord and satisfaction, and for that reason the judgment of the lower court was erroneous.

The judgment is reversed, and the cause remanded, with directions that judgment be entered in favor of the plaintiff for the amount sued for.

McALISTER, C. J., and LOCKWOOD, J., concur.